# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

| | |
|---|---|
| HESS MANAGEMENT FIRM L.L.C., ET AL | CIVIL ACTION NO. 10-1699 consolidated with 10-1857 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| DENISE M. BANKSTON, ET AL | MAGISTRATE JUDGE HORNSBY |

## <u>MEMORANDUM RULING</u>

Before the Court are consolidated appeals by the Plaintiffs, Hess Management Firm, L.L.C. and Hess Construction Co., L.L.C.  (collectively "Hess"), from two rulings by United States Bankruptcy Judge Stephen Callaway.  Both of these appeals arise out of the same adversary proceeding in bankruptcy court:  <u>In re Denise Bankston</u>, 09-10675.

Both appeals involve Hess's right to damages arising out of a commercial contract to provide services.  The contract provided that Hess would receive $25,000 per month for an initial term of sixty months.  The bankruptcy court found in Hess's favor that as a matter of fact the contract had been breached in bad faith.  However, the court limited Hess's damages to payment of the monthly amount of the contract until the business ceased to operate (about six months after the breach) plus an additional six months. (Docket Number 10-cv-1699). Further, the bankruptcy court

denied an award of attorney's fees and/or costs to Hess, despite the fact that Hess was the prevailing party in the adversary proceeding.  (10-cv-1857).

The appeal in 10-cv-1699 centers on two issues. First, are compensatory damages for a contract breach assessed as of the time of the breach or some later date? Second, under this particular contract which specified a fixed monthly payment, what amount of damages can be fixed with reasonable certainty? The appeal in 10-cv-1857 centers on the issue of whether a claim for attorney's fees was adequately pleaded by Hess.

After a thorough review of the record and for the reasons that follow, the Court **REVERSES** the bankruptcy court's finding regarding the amount of damages to which Hess is entitled, and **AFFIRMS** the bankruptcy court's denial of attorney's fees and costs.

## I.   FACTUAL BACKGROUND.

The appeals relate to a breach of contract claim, the facts of which are not truly in dispute.  On November 13, 2007, Hess and Premier Aggregates, L.L.C. ("Premier") executed a contract for the operation of a gravel pit identified as the Fluker Pit.  The principals of Premier are Denise Bankston ("Bankston"), Kevin Schmidt ("Schmidt"), and Jack Singleton ("Singleton").  Bankston, Schmidt, and Singleton are also the guarantors of the Fluker Pit contract between Premier and

Hess.

Although the Fluker Pit contract was signed in November, it was made retroactive to August 21, 2007.  According to the contract, Hess was to manage the gravel pit for a term of sixty months, with an option to renew.  He was to be paid $25,000 per month or a stipend based upon production, whichever was larger. Everyone agrees that Hess was entitled only to the $25,000 monthly fee, as production never reached the level necessary to trigger a higher payment.  The $25,000 monthly payment, according to Judge Callaway's factual finding, was not just to compensate Hess for future services, but contained a payout for amounts already owed to Hess at the time the contract was executed. As Judge Callaway orally explained in his ruling, Hess had already earned "a portion of what was to be paid in the management agreement [the $25,000 per month]. . . . [T]he management agreement takes that and rolls it into the agreement itself and pays it out over time. Pays it out on a monthly basis. . . .  [Premier is] paying him sums that [it] already acknowledge[s] [it] owe[s] him and [it is] also paying him to manage this [Fluker Pit] over a period of time."  Record Document 3-109, p. 40.

With respect to termination of the contract, the contract provided:

[A]t any time, either party may terminate this Agreement as to that Managed Pit on 180 days notice provided that Owner [Premier] may only terminate this Agreement as to that Managed Pit if Manager [Hess] is then in default of any of its material obligations under this

Agreement, which Manager has not cured within 5 days of notice thereof, or if Owner permanently shuts down the use of that Management Pit. . . . Notwithstanding the foregoing, in the event that the operation of a Managed Pit(s) is unprofitable, then Owner may terminate this Agreement with respect to that Managed Pit(s) on a one month advanced notice to Manager.

Record Document 3-80 at 6.

Although Hess was to be paid within ten business days from the date of its invoice to Premier, Hess never received any compensation whatsoever for its services.  On December 18, 2007, one month after executing the contract, Premier notified Hess that the contract was terminated.   On December 28, 2007, Hess responded in writing, stating that Premier was in default of its obligations under the agreement, thus entitling Hess to damages.   Litigation ensued and eventually Bankston filed a proceeding in Bankruptcy Court.  Hess filed a claim based upon Bankston's guarantee, and an adversary proceeding commenced to determine and fix Hess's claim against Bankston.  This matter proceeded to trial before Judge Callaway in May 2010.

Ultimately, Judge Callaway rendered a verdict for Hess in the amount of $375,000.00, which was predicated on a finding that the reasons Premier gave for terminating the contract were all contrived, and thus Premier breached the contract in bad faith.  In other words, Premier created fictitious reasons to terminate the contract and "end this contract because $25,000 a month was a lot of money."

-4-

Record Document 3-109, p. 49.  Further, Judge Callaway noted that Premier did not want to "tell [Hess] they weren't making money because if they told [Hess] they weren't making money, they'd have to pay [Hess] $125,000 and they were trying to get out on the cheap.  They didn't want to pay [Hess] anything."  Id. at 50. Significantly, Premier could have terminated the agreement under the unprofitability provision, but it simply chose not to.

Judge Callaway determined that the contract was not ended on December 18, 2007, the date Hess's employment was terminated, but rather on the date of the Fluker Pit's permanent closure on May 16, 2008.  Thus, he fixed May 16, 2008 as the official date that Hess received notice of the termination of the contract.  It is undisputed that no formal "notice" of termination was sent by Premier to Hess at the time of the pit's closure. However, Judge Callaway observed that Hess had actual knowledge of the closure. Next, Judge Callaway found that pursuant to the contract, the agreement could be terminated 180 days after notice was provided, which meant that Hess was entitled to payment and damages from the retroactive date of the contract (August 21, 2007) through 180 days past May 16, 2008-- roughly fifteen months.  Accordingly, Judge Callaway held that Hess was entitled to fifteen months of damages at $25,000 per month, for a total award of $375,000.  See Record Document 3-91, pp. 1-5.

The parties agreed to allow the bankruptcy court to decide the issue of damages first, before turning to the matter of attorney's fees and costs.  Once the damages ruling was rendered, Bankston filed a motion to determine the amount of attorney's fees and expenses for which she was liable, if any.  In the event the bankruptcy court determined that fees were appropriate, the parties stipulated to fees in the amount of $75,000.  After briefing and argument, Judge Callaway issued a judgment denying fees as to Bankston.  See Record Document 31.  Although no one realized it at the time, the bankruptcy court judgment, which had been crafted by the parties, did not address attorney's fees and/or costs as to Schmidt.

Hess appealed the $375,000 damages award, along with the denial of attorney's fees, to this Court.  At oral argument, the Court expressed its concern that the attorney's fee judgment being appealed was applicable only to Bankston, in that it was silent as to Schmidt's liability.  The parties agreed that the matter needed to be addressed by the bankruptcy court so that an amended judgment, clarifying the bankruptcy court's determination, could be rendered.  On October 26, 2011, Judge Callaway issued a judgment denying attorney's fees and expenses as to Schmidt.  See Record Document 24, pp. 47-49.  Hess has not appealed the judgment denying attorney's fees as to Schmidt.

Thus, the appellate issues before the Court are:  (1) whether the bankruptcy

court erred in finding that, even though a bad faith breach of contract occurred, the breaching party (Premier) could still utilize a contract provision allowing it to terminate the agreement after 180 days notice, or whether, instead, damages accrued at the time of the bad faith breach, entitling Hess to recover the present day value of the monthly payments for the entire initial contract period; and (2) whether the bankruptcy court erred in ruling that Hess was not entitled to recover attorney's fees and/or costs from Bankston when Hess was the prevailing party in the adversary proceeding.

## II.    DAMAGES FOR BAD FAITH BREACH OF CONTRACT.

In appealing the damages award, Hess agrees with Judge Callaway's findings of fact, but urges this Court to find that its damages accrued at the time of the bad faith breach of contract in December 2007, entitling it to $25,000 per month for the initial five year term of the contract.  Thus, the total damage award would be $1,500,000, which the parties have agreed should be discounted to a present value of $1,427,216.87.  The Defendants, on the other hand, argue that Judge Callaway's ruling should be affirmed because: (1) the Fluker Pit could not produce enough gravel to last five years; (2) the Fluker Pit closed permanently on May 16, 2008; and (3) the agreement could have been terminated based on 180 days notice, as provided for in the contract.  Taking those facts into account, the Defendants urge the Court

to find that a breach of contract does not automatically "freeze time" and allow a damage award that is inconsistent with the reality of the situation.  Rather, the damage award should be limited to 180 days after the closure of the pit, as that is the same situation Hess would have been in had Premier, in accordance with the contract, notified Hess of its intention to close the pit.

A.     Standard of Review.

The bankruptcy court's findings of fact are subject to clearly erroneous review, while its conclusions of law are reviewed *de novo*.  See Matter of Kennard, 870 F.2d 1455, 1457-58 (5th Cir. 1992).  Here, the parties disagree on the standard for this Court's review.  Hess contends that Judge Callaway's ruling that Premier could employ an early termination clause to end the contract, despite a bad faith breach, is a conclusion of law and should be reviewed *de novo*.  The Defendants, on the other hand, assert that the size of a damage award is a fact question which should be reviewed for clear error.  This Court agrees with Hess that the determination to be made here is not the assessment of the size of a damage award, but rather a determination under Louisiana law as to WHEN the size of the damage award is assessed.  In the contract under scrutiny, there is a fixed monthly payment amount to which the parties agree.  In concrete terms, the question before this Court is for how many months should the Plaintiff receive this amount.  In order to answer this

question, the Court must answer this legal question:  Are damages assessed as of the date of breach of the contract or at some subsequent date and therefore controlled by subsequent events?   Because this is a legal issue, this Court's review is *de novo*.

      B.     <u>Law and Analysis.</u>

The Civil Code distinguishes between contracts breached in good faith and those breached in bad faith.  "Contracts must be performed in good faith."  La. C.C. Art. 1983.  Generally, a contract "may be dissolved only through the consent of the parties or on grounds provided by law."  <u>Id.</u>  An obligor is liable for the damages caused by his failure to perform a conventional obligation.  La. C.C. Art. 1994.  "Damages are measured by the loss sustained by the obligee and the profit of which he has been deprived."  La. C.C. Art. 1995.  When a contract is performed in good faith, damages are limited to what was foreseeable at the time the contract was made.  <u>See</u> La. C.C. Art. 1996.  However, when a contract is not performed in good faith, the "obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform."  La. C.C. Art. 1997.

But when do these money damages accrue?  "Damages for delay in the performance of an obligation are owed from the time the obligor is put in default.  Other damages are owed from the time the obligor has failed to perform."  La. C.C. Art. 1989.  In explaining damages that occur in breach of an obligation to pay

money, Planiol has stated:

> The damages accorded to the creditor are always fixed in money; this
> is an old rule which is not expressed in the Civil Code, but which is
> understood.  The judge can not enter any judgment other than for the
> payment of money.  It is through error that certain judgments have
> been cited as giving to the creditor an indemnity other than money.  It
> follows from that that the default of payment of a sum of money does
> not give rise to the allocation of compensatory damages; as the original
> object of the debt is already money, the amount of the prejudice that
> the creditor suffers is **entirely fixed in advance**; his loss is equal to the
> sum which was due him.

Planiol Civil Law Treatise, Vol. 2, Part 1, § I.A.224 (1956) (emphasis added).

Furthermore, Saul Litvinoff instructs that "compensatory damages are assessed **as
of the time of breach** . . ."  6 La. Civ. L. Treatise § 4.17 (emphasis added).

At oral argument, the Defendants argued that Hess's cause of action accrued
in December when the contract was breached, but its damages did not accrue at the
same time.  Rather, the $25,000 monthly payment accrued on a month-to-month
basis.  Furthermore, the Defendants urge the Court to find that the $25,000 monthly
payment is a lost future profit, the exact amount of which Hess is unable to prove
with certainty.  In support of this, the Defendants assert that "[t]here is no factual
guarantee that this contract would have extended five years, that Hess would have
continued performing, or that the mine would have stayed open."   Record
Document 17 at p. 5.

The Court believes the answer lies in the provisions of the Civil Code itself,

which provides that damages are owed from the time the obligor has failed to perform.  See La. C.C. Art. 1989.  Thus, in the case of an active breach of contract, damages are due from the date of the breach.  Louisiana jurisprudence is firm on this point. See Sharbono v. Steve Lang & Son Loggers, 97-0110 (La. 7/1/97); 696 So. 2d 1382, 1388 (in "actions ex contractu- under C.C. art. 1989, damages are conceptually 'due' from the date of an active breach . . .," as is interest on those damages); Alexander v. Burroughs Corp., 359 So. 2d 607 (La. 1978) (holding that a debt or claim for payment for money or damages under a contract is ascertainable and becomes due on the date of the active violation, and legal interest runs from that date); Hartec Corp. v. GSE Assoc., Inc., 2010-1332 (La. App. 1 Cir. 2/24/12); 91 So. 3d 375, 390-91 ("[i]nterest on awards for active breaches of contract begins to run 'from the moment' of an active violation of contract"); Newman Marchive P'ship, Inc. v. City of Shreveport, 40,512 (La. App. 2 Cir. 2/24/06); 923 So. 2d 852, 861 (same); S. Marine Sales, Inc. v. Matherne, 05-181 (La. App. 5 Cir. 11/29/05); 915 So. 2d 1042, 1048 ("[d]amages are due 'from the moment' of an active violation of a contract . . ."); Ellwest Stereo Theaters, Inc. v. Davilla, 436 So. 2d 1285, 1288 (La. App. 4 Cir. 1983) (holding that party's damages began to accrue on the date of the breach). In accordance with this principles, the Court rejects the Defendants' theory that Hess's damages accrued on a month-to-month basis.  Instead, the Court concludes

that both Hess's cause of action and its damages accrued at the time of the bad faith breach of contract on December 18, 2007.  The bankruptcy court identified this date as the date that Hess's employment contract was ended by Premier. This Court further concludes that the closure of the pit for whatever reason some five months after the breach is irrelevant to the determination of accrued damages. Likewise, as is discussed in more detail below, the contract language providing for payment to Hess for 180 days after the "notice" of termination of the business is inapplicable to the facts before the Court.

The Defendants submit that, despite Premier's bad faith breach, Hess is not entitled to $25,000 per month for sixty months because it cannot prove with any reasonable certainty that this is the amount of future profits Hess lost.  In support of their argument, the Defendants cite Wasco, Inc. v. Economic Development Unit, Inc., 461 So. 2d 1055 (La. App. 4 Cir. 1984), and Shreveport Great Empire Broad., Inc. v. Summergrove Floor Covering, 455 So. 2d 703 (La. App. 2 Cir. 1984), for the proposition that the gross profits expected under the terms of a contract are not the appropriate measure for damages for breach of contract.  In Wasco, the court found that the district court erred in awarding the plaintiff lost profit damages.  "[T]he plaintiff must show that the loss of profits is more probable than not."  Wasco, 461 So. 2d at 1057.  In addition, the court instructed that "[t]here is no presumption that

-12-

a corporation will make a profit solely because of the existence of a contract." Id. In Summergrove, the court held that the district court erred in awarding the plaintiff the gross amount of the contract then due, finding that recovery in a breach of contract suit is limited to the proven amount of lost profits resulting from the breach. Summergrove, 455 So. 2d at 704.

In putting forth this argument, the Defendants confuse the issue of when damages accrue with the issue of how damages are calculated.  In concrete terms, the Defendants are confusing the issue of how many months of compensation the Plaintiff should receive with how much per month the Plaintiff should receive.  To determine the amount of damages, Civil Code Article 1995 instructs that "damages are measured by the loss sustained by the obligee and the profit of which he has been deprived."  La. C.C. Art. 1995.  In the case of a bad faith breach, as here, the obligor is "liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform."  La. C.C. Art. 1997.   Louisiana case law makes clear that lost profit awards cannot be based on "speculation and conjecture." Folds v. Red Arrow Towbar Sales Co., 378 So. 2d 1054, 1059 (La. App. 2 Cir. 1979).  However, "they need only be proven within a reasonable certainty."  Id.  "[W]here direct evidence is not available to establish the exact extent of loss caused by a breach of contract, resort to customary or foreseeable profit as a measure of damage

-13-

is proper."  Id.  A lost profit calculation must take into account the net profit, as

opposed to the gross.  See Ellwest Stereo Theaters, 436 So. 2d at 1288 (awarding

what the party "would have earned 'conservatively  . . . after deduction of all

expenses . . .'"); Louisiana Gaming Corp. v. Jerry's Package Store, Inc., 94-1189 (La.

App. 3 Cir. 3/1/95); 651 So. 2d 481 (awarding net profit damages for the total

amount of time the exclusive right of the contract was breached); Head's Video

Poker Co., Inc. v. Jordan, 31,745 (La. App. 2 Cir. 3/31/99); 731 So. 2d 946, 950-52

(awarding net profit damages for the entire term of the three year contract, finding

that the parties intended to be bound for three years).  In addition, Litvinoff

explains:

> Where lost profits are concerned, some Louisiana decisions have taken
> a strict approach to the dichotomy between proof of damage and proof
> of the amount of loss, and have refused recovery to plaintiffs who
> failed to prove the amount of the profits of which they allegedly had
> been deprived, on the ground that the lack of such proof rendered the
> claimed lost profit speculative rather than reasonably certain.  In other
> Louisiana decisions, however, in a more flexible approach, the courts
> have placed their main focus on the nature of the future profits
> allegedly lost, and have determined whether those profits were a real
> expectation of the aggrieved party or a mere conjecture, dismissing the
> claim if they found the latter but granting recovery if the former, even
> in the absence of conclusive proof of amount.

6 La. Civ. L. Treatise § 5.27.

In the case at bar, the evidence produced in support of the $25,000 monthly

figure is not speculative and can be proven with reasonable certainty.  The contract

plainly provided that Hess would earn $25,000 per month for sixty months.  This was the intent and expectation of the parties.  Judge Callaway found that $25,000 was the net loss per month.  This is a factual finding with which this Court agrees.  There is no evidence of any deductions that Hess would have incurred.  In fact, Hess's CPA expert, Philip Garrett, explained that Hess had no expenses related to the $25,000 monthly payment; rather, the payment was a fee.

The Defendants argue unconvincingly that the term of sixty months is speculative in and of itself, in that Hess could not have delivered managerial services because the mine ultimately closed.  In the Defendants' opinion, "Hess is fortunate to have recovered for management services which it did not deliver but for which judgment was awarded by Judge Callaway."  Record Document 17, p. 9.  While it is true that the Fluker Pit contract allowed Premier to terminate the agreement after 180 days notice in the event of a pit closure, that event had not happened at the time Premier breached the contract.  Thus, although it was possible for Premier to have permissibly terminated the agreement for that reason, that is not what happened.  It is of paramount significance to the Court that the Defendants attempt to limit their liability by relying on circumstances that had not occurred at the time Premier breached the contract.  Damages cannot be measured by events that happened after the bad faith breach, nor should they be based upon what

Premier could have done or should have done had it not, in fact, chosen to breach the contract in bad faith. This is an unreasonable result which is inconsistent with the concept of a bad faith breach. To allow the Defendants to lessen their liability by relying on events that could have happened had Premier not breached the contract works an injustice on the concept of bad faith breach and serves to eviscerate the legal distinction between good faith breaches and bad faith breaches.

The law demands that the Defendants be responsible for all damages, foreseeable or not, that are a direct consequence of Premier's failure to perform. In accordance with Articles 1995 and 1997, the Court determines that but for Premier's bad faith breach, it would have been obligated to pay Hess $25,000 per month for sixty months. This is the right and quantifiable profit of which Hess has been deprived.

## III. ATTORNEY'S FEES AND COSTS.

In Docket Number 10-cv-1857, Hess appealed Judge Callaway's determination that it was not entitled to attorney's fees and/or costs from Bankston, despite the fact that it was the prevailing party in the adversary proceeding. At the hearing on the issue of liability, Judge Callaway initially opined that he would award attorney's fees in addition to the $375,000 award. However, based on this Court's understanding of the record below, it appears that Judge Callaway ultimately held

that, under the bankruptcy rules, Hess was required to specifically plead its request for attorney's fees in a numbered paragraph in either the complaint, crossclaim, answer or reply thereto.  Thus, the denial of fees was based on that fact that Hess only filed a copy of the Fluker Pit contract, which allowed for attorney's fees, in the adversary proceeding; and in responding to the counterclaims from Bankston and Schmidt, Hess's prayer for relief asked for all of the damages it was entitled to, including attorney's fees and costs.

Hess argues that the contract between it and Premier specifically allows for an award of attorney's fees to the prevailing party, and thus, an award in this case should not be denied for a technical insufficiency.  Bankston asserts that Judge Callaway's ruling should be affirmed because: (1) Hess did not make any specific reference to attorney's fees and/or costs in the adversary complaint; (2) Hess's proof of claim did not reference any attorney's fees and/or costs; (3) the bankruptcy rules regarding pleading require that requests for attorney's fees must be pleaded as a claim in a complaint, cross-claim, third party complaint, answer or reply, and further must be specifically pleaded; and (4) bankruptcy courts generally hold that a claim for attorney's fees is insufficient when it is included only in the prayer for relief.

A.   <u>Standard of Review</u>.

The bankruptcy court's denial of attorney's fees is generally discretionary.  As such, the exercise of that discretion is generally reviewed for abuse of discretion.  <u>See</u> <u>Matter of Terrebonne Fuel and Lube, Inc.</u>, 108 F.3d 609, 613 (5th Cir. 1997).  However, if the court's decision not to award fees is based upon an interpretation of the Bankruptcy Code, the review is *de novo*.  <u>See</u> <u>In re West Delta Oil Co., Inc.</u>, 432 F.3d 347, 354 (5th Cir. 2005).

B.   <u>Law and Analysis</u>.

Rule 7008(b) of the Federal Rules of Bankruptcy Procedure sets forth the general requirements for pleadings in an adversary proceeding in bankruptcy.  In pertinent part, Rule 7008(b) provides that "[a] request for an award of attorney's fees **shall be pleaded as a claim** in a complaint, cross-claim, third-party complaint, answer or reply as may be appropriate." Fed.R.Bankr.P. 7008(b)(emphasis added).  This requirement ensures that the opposing party has adequate notice of the claims or defenses being presented.

Most courts to consider the present issue have held that a claim for attorney's fees is an item of special damage, and thus must be specifically pleaded in accordance with Federal Rule of Bankruptcy Procedure 7009, which incorporates Federal Rule of Civil Procedure 9(g).  Rule 9(g) explains that "when items of special

damage are claimed, they shall be specifically stated."  In <u>United Industries, Inc. v. Simon-Hartley, Ltd.</u>, 91 F.3d 762, 764 (5th Cir. 1996), the Fifth Circuit Court of Appeal noted that its "sister circuits routinely classify attorney's fees as special damages that must be specifically pleaded under Federal Rule of Civil Procedure 9(g)."[1]  Although the Fifth Circuit admitted that it had never specifically held that attorney's fees must be specifically pleaded, "we have intimated this is so," and the court had routinely affirmed district courts' denials of attorney's fees in the absence of appropriate pleadings.  <u>Id.</u> at 764-65.  In sum, the <u>United</u> court instructed, "we find nothing inappropriate with requiring a party to put its adversaries on notice that attorneys' fees are at issue in a timely fashion or waive that claim.  This is accomplished by specifically pleading for attorneys' fees in the complaint."  <u>Id.</u> at 765.

After <u>United</u>, in the Fifth Circuit, attorney's fees are generally treated as special damages which must be specifically pleaded under Rule 9(g).[2]  <u>See</u> <u>In re IFS</u>

_____

[1] In so stating, the <u>United</u> court cited <u>Maidmore Realty Co., Inc. v. Maidmore Realty Co., Inc.</u>, 474 F.2d 840, 843 (3d Cir. 1973) ("claims for attorney fees are items of special damage which must be specifically pleaded under Federal Rule of Civil Procedure 9(g)."); <u>W. Cas. & Sur. Co. v. Sw. Bell Tel. Co.</u>, 396 F.2d 351, 356 (8th Cir. 1968) ("claims for attorneys' fees are also items of special damage which must be specifically pleaded under Fed.R.Civ.P. 9(g)."); and <u>In re Am. Cas. Co.</u>, 851 F.2d 794, 802 (6th Cir. 1988).

[2] There are exceptions to the rule barring attorney's fees when the request is not specifically pleaded.  For instance, when the issue is tried by consent or included in a pretrial order, or the opponent is otherwise on notice that attorney's fees are being

Fin. Corp., 2010 WL 1992579, at * 3 (S.D. Tx. May 18, 2010); see also In re Ramsey, 424 B.R. 217, 226 (Bankr. N.D. Miss. 2009) (plaintiff's request for attorney's fees denied because complaint did not include any request or claim for attorney's fees, and plaintiff only raised the argument at trial while arguing a motion for leave to amend his complaint).

The majority of other courts to consider this issue agree that attorney's fees are a special damage which require specific pleading.  See Smith v. DeBartoli, 769 F.2d 451, 453 n.2 (7th Cir. 1985) ("[S]pecial damages . . . must be alleged in the complaint to be recovered"); In re Am. Cas. Co., 851 F.2d 794, 802 (6th Cir. 1988) ("In the absence of allegations that the pleader is entitled to attorney's fees, . . . such fees cannot be awarded"); Atl. Purchasers, Inc. v. Aircraft Sales, Inc., 705 F.2d 712, 716 n.4 (4th Cir. 1983) (barring claim for attorney's fees because plaintiff "failed to state specifically the claim for fees in the complaint"); In re Odom, 113 B.R. 623, 625 (Bankr.  C.D. Cal. 1990) (denying the recovery of attorney's fees incurred by plaintiffs because their complaint failed to allege those special damages, as required by Rule 9(g)).

Further, statements made in a prayer for relief are often deemed insufficient to satisfy the requirement that attorney's fees be stated as a claim.  See Matter of

_____

sought, the award may be appropriate.  See United, 91 F.3d at 764-65.

-20-

DeMaio, 158 B.R. 890, 892 (Bankr. D.Conn. 1993); see also In re Odom, 113 B.R. 623,

625 (Bankr. C.D. Cal. 1990) (holding that the plaintiff's claim for attorney's fees was

insufficient under Rule 7008(b) because it was included only in the prayer for relief,

rather than in the body of the complaint). Finally, Rule 7010, which incorporates

Federal Rule of Civil Procedure 10(b), requires that all claims in pleadings be made

in the form of numbered paragraphs.  Thus, some courts hold that the request for

attorney's fees must also be specifically stated in a numbered paragraph. See Matter

of DeMaio, 158 B.R. 890, 892 (Bankr. D.Conn. 1993).

        In the case at bar, Hess's adversary complaint did not specifically plead

attorney's fees.  Rather, in the prayer for relief, the complaint merely asked for "any

and all damages as the creditors, Hess Management and Hess Construction, may be

entitled by law to recover . . . ."  Record Document 3-3 in Docket Number 10-1857.

Similarly, Hess failed to mention attorney's fees in the proof of claim it filed and

incorporated into the adversary complaint by reference; rather, Hess simply

attached a copy of the Fluker Pit contract, which contains a provision authorizing

attorney's fees.  Although Hess relies upon the fact that it mentioned attorney's fees

in its answer to Bankston's and Schmidt's counterclaims, that was done so only in

the prayer for relief:  "defendant-in-counterclaim prays for all general relief,

including attorney fees pursuant to the aforementioned contracts."  Record

Documents 3-9 and 3-10 in Docket Number 10-1857.

Under the guidance of the aforementioned jurisprudence and the Federal Rules of Bankruptcy Procedure, it is the Court's opinion that Hess's barebones statement in the adversary complaint, asking for "any and all damages . . . it may be entitled by law to recover" fails to comply with Rules 7008 and 7009 and is insufficient to warrant the award of attorney's fees.  Likewise, merely attaching a copy of a contract, one paragraph of which permits an award of attorney's fees, is also insufficient. The Court additionally concludes that the request for attorney's fees in the prayer for relief in the answer to Bankston's counterclaim fails to satisfy the requirement that attorney's fees, as a special damage, must be specifically pleaded.  Judge Callaway's denial of fees and/or costs is affirmed accordingly.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the bankruptcy court's damage award is **REVERSED**. The amount of damages due is $25,000 per month for sixty months, which totals $1,500,000.00.  The parties agree that the present value of that award is $1,427.216.87. The Defendants are liable for legal interest on this damage award, which began to accrue on December 18, 2007 and will continue to accrue until paid.

**IT IS FURTHER ORDERED** that the bankruptcy court's denial of attorney's

fees and/or costs as to Bankston is **AFFIRMED**.

A judgment consistent with the instant memorandum ruling shall issue herewith.

**THUS DONE AND SIGNED** on this 27th day of September, 2012.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE